

CORPORATION SERVICE COMPANY®

## Notice of Service of Process

null / ALL
Transmittal Number: 11296909
Date Processed: 06/19/2013

| | |
|---|---|
| Primary Contact: | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02117 |

| | |
|---|---|
| Entity: | Liberty Mutual Group Inc.<br>Entity ID Number 2541558 |
| Entity Served: | Liberty Mutual Group |
| Title of Action: | Micah Jackson vs. Liberty Mutual Group |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Class Action |
| Court/Agency: | Williamson County Chancery Court, Tennessee |
| Case/Reference No: | 42150 |
| Jurisdiction Served: | Tennessee |
| Date Served on CSC: | 06/19/2013 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Certified Mail |
| Sender Information: | Sonya S. Wright<br>615-896-8000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**Exhibit B**

# MARSHALL THOMAS BURNETT
## ATTORNEYS AT LAW

### 214 WEST MAIN STREET
### MURFREESBORO, TN 37130
### TELEPHONE: (615) 896-8000
### FACSIMILE: (615) 896-8088

June 17, 2013

Corporation Service Company
Registered Agent for Liberty Mutual Group
2908 Poston Ave.
Nashville, TN 37203-1312

      Re:   *Micah Jackson vs. Liberty Mutual Group*, Williamson County Chancery
            Court, Civil Action No. 42150

Dear Registered Agent:

    Please find enclosed the Summons, Complaint for Class Action Relief and Individual
Relief with Exhibits 1-5, and the Plaintiff's Interrogatories, Requests for Production of
Documents and Requests for Admissions to Liberty Mutual Group in the above referenced
matter.

    As always, please feel free to contact me at the number above should you have any
questions or would like to discuss further. Thank you for your immediate attention to this
matter.

                Sincerely,

                *Sonya S. Wright*

                Sonya S. Wright

Enclosures

# STATE OF TENNESSEE
## *Alias* SUMMONS

FILED
WILLIAMSON COUNTY
CLERK & MASTER
2013 JUN 13 AM 8:45
ENTERED

### IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE

_Micah Jackson_
Plaintiff

_____
Plaintiff

_Liberty Mutual Group_ v.s.
Defendant

_____
Defendant

_____
Defendant

CIVIL ACTION NO. _____

Service By:
☐ Sheriff
☐ Attorney
☐ Sec. Of State
☐ Comm. Of Insurance

To the above named Defendant:

You are hereby summoned and required to serve upon _Sonya Wright_ plaintiff's attorney, whose address is _214 West Main Street, Murfreesboro, TN 37130_, an answer to the complaint which is herewith served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Witnessed and issued, Elaine B. Beeler, Clerk and Master for said Court at office this _13_ day of _June_, 20_13_.

_Ben J. Smithson_
Clerk & Master

## NOTICE:

To the defendant(s): Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the terms you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Mail list, including docket number, to: Clerk and Master, P.O.Box 1666, Franklin, TN 37065.

DEFT /WITNESS COPY

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that I served this summons together with the complaint as follows:

Check one: (1) or (2) are for the return of an authorized officer or attorney; an attorney's return must be sworn to; (3) is for the witness who will acknowledge service and requires the witness's signature.

- ☐ 1. I certify that on the date indicated below I served a copy of this summons on the witness stated above by _____
- ☐ 2. I failed to serve a copy of this summons on the witness because _____
- ☐ 3. I acknowledge being served with this summons on the date indicated below:

DATE OF SERVICE: _____

SIGNATURE OF WITNESS, OFFICER OR ATTORNEY: _____

Signature of Notary Public or Deputy Clerk: _____

Commission Expires: _____

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20_____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case no. _____ to the defendant _____, on the _____ day of _____, 20_____. I received the return receipt, which had been signed by _____ on the _____ day of _____, 20_____. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk and Master.

_____
Signature

Sworn to and subscribed before me on this ___ day of _____ 20____.

_____
Signature of Notary Public or Deputy Clerk

Commission Expires: _____

## CERTIFICATION (IF APPLICABLE)

I hereby certify this to be a true and correct copy of the original summons issued in this case.

_____
CLERK & MASTER

IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

MICAH JACKSON,
    Plaintiff,

v.

LIBERTY MUTUAL GROUP,
    Defendant.

)
)
)
)
)
)
)
)
)

JURY DEMAND

Case No.: 42150

## COMPLAINT FOR CLASS ACTION RELIEF AND INDIVIDUAL RELIEF

Plaintiff Micah Jackson, individually and on behalf of all others similarly situated (the "Class") for her Complaint against the Defendant, Liberty Mutual Group, ("Defendant" or "Liberty Mutual"), seeks declaratory relief and individually seeks damages and would respectfully show and allege to the Court as follows:

### GENERAL ALLEGATIONS

1.    Plaintiff, Micah Jackson, owns property located at 605 Quarter Horse Lane, Nolensville, TN 37135-9764.

2.    Defendant, Liberty Mutual, is a for-profit domestic insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee with its principle place of business located at 175 Berkeley Street, Boston, MA 02116-5066. The registered agent for service of process of Liberty Mutual is Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312.

3.    Plaintiff's claim for relief arises from a covered sinkhole loss to her property located at 605 Quarter Horse Lane, Nolensville, TN 37135-9764 (hereinafter the "Property"). Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

4.    At all times material hereto, Plaintiff has been the owner of the Property.

1

## APPLICABLE STATUTORY PROVISIONS

5.    Tenn. Code Ann. § 56-7-130(b), (c) and (d), provide:

(b)    <u>Every insurer offering homeowner property insurance in this state shall make available coverage for insurable sinkhole losses</u> on any dwelling, including contents of personal property contained in the dwelling, to the extent provided in the policy to which the sinkhole coverage attaches.

(c)    <u>Every insurer</u> authorized to transact property insurance in this state **shall make a proper filing** with the department of commerce and insurance <u>for the purpose of extending the appropriate policy of homeowner property insurance to include coverage for sinkhole losses</u>. The insurer **may make coverage available** in the policy itself, by endorsement, or through other coverage that the insurer may arrange, and the insurer may make an additional charge for the coverage.

(d)    <u>Upon receipt of a claim for a sinkhole loss, an insurer shall</u> meet the following minimum standards in investigating a claim.

(Emphasis added.)

## PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF

6.    Plaintiff adopts, reallege and incorporates by reference the allegations contained in paragraphs 1 through 5 above as though fully set forth herein.

7.    This is a class action brought pursuant to Rules 23.01 and 23.02 of the *Tennessee Rules of Civil Procedure*, seeking declaratory relief pursuant to Tenn. Code Ann. § 29-14-101, *et. seq.*, to determine and declare Defendant has violated Tenn. Code Ann. § 56-7-130, as more specifically set forth below.

8.    Plaintiff renewed or procured a policy of homeowners insurance known as the LibertyGuard Deluxe Homeowners Policy ("Policy"), from Defendant covering the above-referenced Property on or about June 6, 2011. A copy of the certified Policy is attached as <u>Exhibit 1</u>.

2

9. The Policy is an "all-risk" insurance policy which covers "direct loss to property" to the insured dwelling unless caused by one or more excluded perils.

10. Under an "all-risk" policy, once it is determined that an insured dwelling has sustained damage during an applicable policy period, the burden rests upon the insurance carrier to establish that the damage is exclusively caused by one or more of the excluded losses or damages.

11. Notwithstanding the requirements of Tenn. Code Ann. § 56-7-130, Defendant issued the Policy and failed or refused to make available coverage for sinkhole losses.

12. More specifically, the Policy excludes losses caused by "earth movement" which is defined as "earth sinking" but does not exclude sinkholes.

13. Tenn. Code Ann. § 56-7-130 was enacted to provide safeguards to policyholders in this state and is remedial in nature. Because this section sets forth the *minimum* requirements to which property insurers offering policies to the citizens of this state must adhere, sinkhole coverage cannot be narrowed or eliminated by insurers via exclusions contrary to the law.

14. When Plaintiff purchased the Policy, Defendant did not tell Plaintiff that sinkhole coverage was excluded nor was she told sinkhole coverage must be purchased separately.

15. Defendant did not make available any information regarding sinkhole coverage to Plaintiff at the time Defendant offered the Policy or at any time prior to Plaintiff purchasing the Policy.

16. In consideration of monies paid by Plaintiff to Defendant, the Policy was issued, insuring the Plaintiff's Property against risks. The Policy provided dwelling insurance coverage in the amount of $174,500.00, in addition to other coverages.

3

17.     Plaintiff has renewed the Policy each and every year and has paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

18.     On or about March 1, 2012, while the Policy was in full force and effect, the Property was damaged.

19.     The damage to Plaintiff's Property is not excluded under the Policy.

20.     A notice of loss and damage was properly given by Plaintiff to Defendant in accordance with the terms of the Policy.

21.     When Plaintiff, through her public adjuster, originally called in to make the claim, she was told that Defendant did not offer sinkhole coverage and that Plaintiff did not have coverage.

22.     After many attempts, by the public adjuster to have Defendant investigate the claim pursuant to the statute, no response was ever provided.  Plaintiff then personally contacted Defendant directly, and after multiple attempts for clarification of the disposition of her claim, Defendant finally responded to Plaintiff by sending a denial letter on December 21, 2012.  A copy of this correspondence is attached as Exhibit 2.

23.     In the December 21, 2012 correspondence, Defendant advised Plaintiff by letter that it was denying coverage under the Policy.  Defendant represented to Plaintiff that an exclusion contained in the Policy applied and excluded coverage for her claim.

24.     At the same time, Defendant stated to Plaintiff that several exclusions applied and that "earth movement" was excluded from the Policy.

25.     On or about March 1, 2013, Plaintiff, through counsel, sent a request that the full amount be paid or that Plaintiff would seek a bad faith penalty for the handling of her claim.  A copy of this correspondence is attached as Exhibit 3.

4

26.     On or about March 7, 2013, almost 6 months after the claim was made, Defendant sent a letter stating that it was finally conducting an investigation. A copy of this correspondence is attached as Exhibit 4.

27.     On or about March 15, 2013, an individual hired by Defendant came to Plaintiff's Property but no testing was performed.

28.     On or about April 9, 2013, Plaintiff, through counsel, requested the findings of the site visit of March 15, 2013, and requested a coverage determination. A copy of this correspondence is attached as Exhibit 5.

29.     More than 60 days has passed since Plaintiff demanded payment and as of the date of this filing, there has been no indication from Defendant that the claim will be paid and no payment has been made on the claim.

30.     Further, no coverage determination from the March 15, 2013 site visit has been provided to Plaintiff and no report of any kind regarding this visit has been provided, even though Defendant stated that this information would be provided.

31.     Plaintiff has complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiff for the loss and damage sustained.

32.     Plaintiff has been required to retain the services of the undersigned counsel and is obligated to pay them a reasonable fee for their services.

33.     Plaintiff is entitled to have her home properly repaired, including, but not limited to, remediation of subsurface conditions and restoration of the foundation, cosmetic repair, repairs of the cracks, structural repair, temporary repairs and other structurally necessary repairs. If the home is not repairable within the applicable coverage limits, Plaintiff is entitled to be compensated for the total loss.

5

34. Upon information and belief, Defendant is taking the position that Tenn. Code Ann. § 56-7-130 does not require Defendant to include sinkhole coverage, actually make available or tell an insured about sinkhole coverage, or ask prospective insureds if they would like to purchase such coverage.

35. Tenn. Code Ann. § 56-7-130 addresses, among other things, an insurer's obligation to provide sinkhole coverage, sets forth certain minimum claims adjusting guidelines for sinkhole claims, and prohibits insurers from failing to renew any policy of property insurance due to filing a claim for sinkhole damage unless certain requirements are met.

36. Accordingly, Tenn. Code Ann. § 56-7-130 affects the parties' related substantive rights.

37. Given the present, ascertained or ascertainable state of facts or present controversy as to the state of facts, there exists a bona fide, actual, present practical need for a declaratory judgment as to whether Tenn. Code Ann. § 56-7-130 required Defendant to make available sinkhole coverage to the Plaintiff.

38. The parties have, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter of this lawsuit, either in fact or law, and all antagonistic and adverse interests are all properly before the Court by proper process.

39. The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

40. The applicability of section Tenn. Code Ann. § 56-7-130 to Defendant is dependent upon the facts or the law applicable to the facts, as more specifically set forth herein.

6

41.     Plaintiff is entitled to have this issue resolved and without a Court declaration, uncertainty will remain regarding the status of certain immunities, powers, privileges and/or rights of the parties under the insurance policy and Tennessee law.

42.     All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

<u>CLASS ACTION ALLEGATIONS</u>

43.     Plaintiff adopts, reallege and incorporates by reference the allegations contained in paragraphs 1 through 42 above as though fully set forth herein.

44.     Pursuant to Rules 23.01 and 23.02 of the *Tennessee Rules of Civil Procedure*, Plaintiff seeks certification of a Class, defined as follows:

> All persons who were issued homeowners property insurance policies by Defendant covering property located in Tennessee where Defendant failed or refused to make available coverage for sinkhole losses as required by Tenn. Code Ann. § 56-7-130.

45.     Although the exact number of Class members is within the exclusive knowledge of Defendant, the Class is believed to consist of hundreds, if not thousands, of individuals entitled to sinkhole coverage in their insurance policies with Defendant.  Accordingly, the Class is so numerous that joinder of all Class members is impractical.

46.     There are numerous questions of law and fact common to the Class, such as whether Tenn. Code Ann. § 56-7-130 requires Defendant to make available sinkhole coverage to its customers who purchase homeowners property insurance policies issued in Tennessee.

47.     Plaintiff's claims are typical of the claims of the Class.   Plaintiff seeks a declaration that Plaintiff and the Class are entitled to sinkhole coverage under their homeowners' insurance policies with Defendant pursuant to Tenn. Code Ann. § 56-7-130.

7

48. Plaintiff will fairly and adequately represent the interests of Class members. Plaintiff has no interest antagonistic to those of other Class members, and Plaintiff has retained attorneys experienced as counsel in class action and complex litigation.

49. Upon information and belief, Defendant has acted on grounds generally applicable to the Class in that Defendant is violating Tenn. Code Ann. § 56-7-130, by not making coverage for sinkhole losses available. As a result, the Class is entitled to a declaratory judgment that the Class members are entitled to sinkhole coverage under their insurance policies with Defendant pursuant to Tenn. Code Ann. § 56-7-130.

50. The questions of law and fact common to members of the Class predominate over any individual questions. Defendant uniformly disputes the requirements of Tenn. Code Ann. § 56-7-130.

51. A class action is superior to individual actions as a means of fair and efficient adjudication of this controversy.

52. The interest of Class members in individually controlling the prosecution of actions to remedy Defendant's refusal to acknowledge the requirements of Tenn. Code Ann. § 56-7-130, is minimal.

53. There are no difficulties that are likely to be encountered in the management of this lawsuit should it proceed as a class action.

54. The Class should be certified pursuant to Rule 23.02 of the *Tennessee Rules of Civil Procedure* because Defendant has acted on grounds generally applicable to all Class members by disputing the applicability of Tenn. Code Ann. § 56-7-130, and by failing or refusing to make available coverage for sinkhole losses as required by Tenn. Code Ann. § 56-7-130.

8

55. The Class should also be certified pursuant to Rule 23 *Tennessee Rules of Civil Procedure* because, as set forth in the preceding paragraphs. The requirements for class certification set forth in Rules 23.01 and 23.02 have been met.

56. Because this dispute has arisen, Plaintiff has been required to retain the services of the undersigned counsel and is obligated to pay them a reasonable fee for their services.

57. All conditions precedent to the maintenance of this action have occurred, have been performed or have been waived.

WHEREFORE, Plaintiff and the Class respectfully request judgment against Defendant: (i) declaring the rights and duties of the respective parties under their insurance policies with Defendant; (ii) declaring that Tenn. Code Ann. § 56-7-130 applies to Defendant; (iii) declaring that Plaintiff and the Class are entitled to sinkhole coverage under their insurance policies with Defendant; (iv) declaring that Plaintiff and the Class are entitled to notice that Plaintiff and the Class have sinkhole coverage under their insurance policies with Defendant and notice of a reasonable time period to submit claims for sinkhole losses; (v) awarding costs, expert fees and attorneys' fees; and (vi) awarding such other and further relief as the Court deems just and appropriate under the circumstances.

In addition to the Class Action relief sought, Plaintiff individually brings the following claims against Defendant.

## BREACH OF CONTRACT

58. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 57 above as though fully set forth therein.

9

59.     Defendant has breached the Policy by denying coverage and failing and refusing to pay all benefits due thereunder for the claim of sinkhole activity, and failing and refusing to provide any additional information from the site visit on March 15, 2013.

60.     Defendant failed to properly investigate the Property as required under the Policy and by state statute.

61.     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

62.     Defendant failed to investigate the Plaintiff's claims in a prompt and thorough manner.

63.     Defendant intentionally ignored repeated requests to reconsider its wrongful denial of insurance coverage for the Plaintiff's claims.

64.     Defendant represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage.  Such acts or omissions were committed intentionally, recklessly, and/or negligently.

65.     Defendant owes Plaintiff prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss.

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

66.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 65 above as though fully set forth therein.

67.     Defendant has breached the covenant of good faith and fair dealing that is a part of the Policy that it made with the Plaintiff.

10

68.     Defendant has evaded the spirit of the bargain with the Plaintiff, has shown a lack of diligence and slacking off with regards to investigation of the claim and performing under the Policy, and has willfully rendered imperfect performance under the Policy.

## FRAUD AND MISREPRESENTATION

69.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 68 above as though fully set forth therein.

70.     Defendant committed fraud by intentionally or recklessly misrepresenting to the insured Plaintiff that exclusionary language contained in the Plaintiff's Policy excluded coverage, when in fact the Policy does not exclude such coverage. Such misrepresentation was committed knowingly or recklessly for the purpose of taking undue advantage of the insured and was justifiably relied on by the insured, who accepted the representation as true.

## UNFAIR CLAIMS PRACTICES

71.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 70 above as though fully set forth therein.

72.     Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

(A)     Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiff's claim, in violation of Tenn. Code Ann. § 56-8-105;

(B)     Refusing to pay Plaintiff's claim without conducting reasonable investigation in violation of Tenn. Code Ann. § 56-8-105; and

(C)     Knowingly misrepresenting relevant Policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105.

73.     The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly. While this is not a separate cause of action, Plaintiff puts Defendant on notice that evidence of these acts will be presented in this lawsuit.

11

## NEGLIGENCE *PER SE*

74.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 73 above as though fully set forth therein.

75.     Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130 (d), including but not limited to the following respects:

   (A)     Defendant denied the claim prior to conducting any type of investigation as required under Tenn. Code Ann. § 56-7-130 (d)(2);

   (B)     Defendant failed to obtain a written certification stating that the cause of the claim is not sinkhole activity as required under Tenn. Code Ann. § 56-7-130 (d)(2); and

   (C)     After additional requests by the Plaintiff, Defendant still failed to conduct analysis of sufficient scope to eliminate sinkhole activity as the cause of the damage as required under Tenn. Code Ann. § 56-7-130 (d)(2).

76.     Defendant failed to make available sinkhole coverage to Plaintiff or intentionally hid this type of coverage from Plaintiff in violation of Tenn. Code Ann. § 56-7-130.

77.     Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

   (A)     Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiff's claim, in violation of Tenn. Code Ann. § 56-8-105; and

   (B)     Refusing to pay Plaintiff's claim, in violation of Tenn. Code Ann. § 56-8-105.

78.     The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly.

79.     As a result of Defendant's failure to perform its statutory duty, Plaintiff has been injured. Plaintiff was within the protection of the Tenn. Code Ann. § 56-7-130 and §§ 56-8-101 through 56-8-111, and was intended to benefit from these laws.

12

## STATUTORY BAD FAITH AND COMMON LAW BAD FAITH

80.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 79 above as though fully set forth therein.

81.     Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiff.   Accordingly, Plaintiff is entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

82.     The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiff, including, but not limited to:

(A)     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)     Defendant failed to investigate the Plaintiff's claims in a prompt and thorough manner; and

(C)     Defendant intentionally ignored requests to pay the claim of insurance Policy coverage for the Plaintiff's claims.

Such acts or omissions were committed intentionally, recklessly and negligently.

83.     Liberty Mutual has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds.  A history of court determinations and complaints of bad faith conduct on the part of Liberty Mutual has put Liberty Mutual on notice that its claims handling practices have resulted in repeated incidents of bad faith.  In spite of such notice, Liberty Mutual has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate the misconduct.

13

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiff's home; (v) pre-judgment interest; and (vi) any other relief as the Court deems just and appropriate. Plaintiff prays for all relief and damages to which they are entitled under the common law, including compensatory damages, attorney fees, and costs in an amount to be decided by a jury.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

*Sonya S. Wright*

Joshua D. Burnett (BPR 027686)
Sonya S. Wright (BPR 023898)
MARSHALL THOMAS BURNETT
214 West Main Street
Murfreesboro, Tennessee 37130
(615) 896-8000, phone
(615) 896-8088, facsimile
jburnett@mtblaw.com
swright@mtblaw.com

*Attorneys for Plaintiff*

14

**Sonya S. Wright**

FILED
WILLIAMSON COUNTY
CLERK & MASTER

2013 MAY 29 PM 12: 29

ENTERED_____

| | |
|---|---|
| **From:** | Sonya S. Wright |
| **Sent:** | Tuesday, April 16, 2013 4:42 PM |
| **To:** | 'Gurley, Christopher' |
| **Subject:** | RE: Jackson claim 024093451-01 |

Thanks for confirming.

**Sonya Smith Wright**
Marshall Thomas Burnett
Murfreesboro, TN
Direct: 615.896.8000

The information contained in this transmission may be attorney-client privileged, work product and/or confidential. It is intended only for the use of the individual or entity named above. If you are not the intended recipient(s), you are hereby notified that any unauthorized disclosure, dissemination, distribution or copy of this communication, or the information contained herein, may be strictly prohibited by law. If you have received this communication in error, please notify the sender immediately by telephone (collect) or reply e-mail and delete and destroy all copies of the original message. Thank you.

**From:** Gurley, Christopher [mailto:CHRISTOPHER.GURLEY@LibertyMutual.com]
**Sent:** Tuesday, April 16, 2013 4:19 PM
**To:** Sonya S. Wright
**Subject:** Jackson claim 024093451-01

The copy of the policy received was a certified copy. I will forward the engineers report once it arrives. Thank you so much.

EXHIBIT
1

1



**Liberty Insurance Corporation**
Boston, Massachusetts
LibertyGuard® Deluxe
Homeowners Policy Declaration



Liberty Mutual Group

NAMED INSURED AND MAILING ADDRESS:
MICAH JACKSON
605 QUARTER HORSE LN
NOLENSVILLE TN 37135-9764

SALES REP:  A CAMPBELL
4017 HILLSBORO PIKE STE 406
NASHVILLE TN 37215

INSURED RESIDENCE PREMISES:
SAME AS MAIL ADDRESS

SERVICE:   615-463-5990/888-649-8711
CLAIMS:    800-2CLAIMS (800-225-2467)
WEBSITE:   libertymutual.com

Your Policy Number: H37-258-506741-400 4
Policy Period: 06/10/10 to 06/10/11  12:01AM Standard Time at the Insured Residence Premises

| Reason for This Notice: | This Declaration Effective: 06/10/10 |
|---|---|
| New Homeowners Policy | |

## Premium Summary

| | | |
|---|---|---|
| Base Policy Coverages and Limits | $ | 888.00 |
| Additional Coverages | $ | 0.00 |
| Total Annual Premium | $ | 888.00 |

## Premium Detail

| Base Policy Coverages and Limits | Deductible | Limits | Premium |
|---|---|---|---|
| **Section I** | | | |
| Coverage A - Dwelling with Expanded Replacement Cost | $ | 174,500 | |
| Coverage B - Other Structures on Residence Premises | $ | 17,450 | |
| Coverage C - Personal Property with Replacement Cost | $ | 130,880 | |
| Coverage D - Loss of Use of Residence Premises | Actual Loss Sustained | | |
| **Section I Deductible** | | | |
| Losses covered under Section I are subject to a deductible of: | $ 1,000 | | |
| **Section II** | | | |
| Coverage E - Personal Liability (each occurrence) | $ | 300,000 | |
| Coverage F - Medical Payments to others (each person) | $ | 1,000 | |
| Total Base Policy Coverages and Limits | | | $ 888 |

| Additional Coverages | Deductible | Limits | Premium |
|---|---|---|---|
| Credit Card, Fund Transfer, Forgery (HO 04 53 04 91) | $ | 1,000 | $ 0 |
| Home Protector Plus (FMHO-1183) | | | $ Incl |
| Backup Of Sewer And Sump Pump Overflow Coverage (FMHO-2062) | $ 1,000 | $ 10,000 | $ Incl |
| Coverage E increased limit | | | $ Incl |
| Total Additional Coverages | | | $ 0 |

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 20 of 91 PageID #: 67

(Continued from Previous Page)

**Discounts**
MyVWInsurance
    Preferred Risk Rating Plan Discount:
        Inflation Protection Discount
        Early Shopper Discount
        Recent Home Buyer Discount
        New Roof Discount
    Protective Device Discount:
        Smoke/Heat Alarm-All Floors, Extinguishers and Dead Bolt Locks
        Complete Local Fire Alarm
    Claims Free Discount

| | |
|---|---|
| Multi Policy Discount - Auto | No |
| Multi Policy Discount - Life | No |
| Multi Policy Discount - Personal Liability Policy | No |

**Special Messages and Tennessee Provisions**
Your Homeowners policy **does not** provide coverage for damage caused by flood, even if the flood is caused by storm surge. Liberty Mutual can help you obtain this coverage through the Federal Emergency Management Agency (FEMA) if your community is one of the 18,000 communities which participate in the National Flood Insurance Program.

**Base Policy and Amendments Included in Your Policy**

| | |
|---|---|
| LibertyGuard® Deluxe Homeowners (HO 00 03 04 91) | |
| Special Provisions (HO 01 41 10 94) | No SecII/Limit I-Daycare (HO 04 96 04 91) |
| Arson Reward (FMHO-993) | Underground Fuel Storage (FMHO-1097 1/97) |
| Homeowner Amendatory End (FMHO-2493 5/03) | Amendatory Mold End (FMHO-2199 R1) |
| Protective Devices (HO 04 16 04 91) | Inflation Protection (FMHO-2835 11 03) |
| Lead Poisoning Exclusion (FMHO-976 05/92) | Education Coverage End (FMHO-2357) |

**Mortgage Information**
Mortgagee 1:
REPUBLIC STATE MORTGAGE
ISAOA
LOAN NO. 1161005003
2715 BISSONNET ST STE 102
HOUSTON TX 77005-1318

---

FMHO 3047 12 06        Countersigned        06/09/10

*Dexter R. Legg*
SECRETARY

*Edward F Kelly*
PRESIDENT

*Stephen J Sweeney*

AUTHORIZED REPRESENTATIVE

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 21 of 91 PageID #: 68

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE
### Increased Limit

For an additional premium, the limit of liability for Additional Coverage 6., Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ _____*.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

HO 04 53 04 91          Copyright, Insurance Services Office, Inc., 1990          Page 1 of 1



# HOMEPROTECTOR PLUS ENDORSEMENT

**A. INCREASED SPECIAL LIMIT OF LIABILITY - JEWELRY, WATCHES, FURS, PRECIOUS AND SEMI-PRECIOUS STONES**

Section I, Coverage C - Personal Property. Special Limits of Liability. Paragraph 5 is replaced with:

5. Jewelry, watches, furs, precious and semi-precious stones are insured for accidental direct physical loss or damage. The following exclusions and limitations apply:

   a. $2500 for loss by theft, subject to a maximum of $1000 for any one article.

   b. The limit of liability stated in the declarations page for Coverage C, for loss caused by perils named under Coverage C of this policy, other than theft.

   c. $2500 for loss caused by perils not named and not excluded in this policy, subject to a maximum of $1000 for any one article.

   d. We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin or inherent vice.

**B. REPLACEMENT COST PROVISION - DWELLING AND PERSONAL PROPERTY**

You must meet the following additional Section I Condition for this provision to apply:

17. Additions or Changes to Dwelling - Notice to Company. You must inform us within 90 days of the start of any additions, alterations or improvements to the dwelling that will increase the replacement cost of the dwelling by $5,000 or more.

If you meet Condition 17, then Section I, Condition 3. Loss Settlement, is deleted and replaced by the following:

3. Loss Settlement. Covered property losses are settled as follows:

   a. The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:

      (1) We will pay the cost of repair or replacement, but not exceeding:

         (a) The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;

         (b) With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

         (c) With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;

         (d) The amount actually and necessarily spent to repair or replace the damage.

      (2) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.

      However, if the cost to repair or replace the damage is both:

         (a) Less than 5% of the amount of insurance in this policy on the building;

            and

         (b) Less than $2500;

      We will settle the loss according to the provisions of a.(1) above whether or not actual repair or replacement is complete.

   b. Awnings, outdoor antennas and outdoor equipment, whether or not attached to buildings, and structures that are not buildings; at actual cash value at the time of loss but not exceeding the amount needed to repair or replace.

FMHO 1183        Liberty Mutual Group        Page 1 of 2

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 23 of 91 PageID #: 70


Liberty Mutual.
INSURANCE

   c. Personal property, carpeting and household appliances: at replacement cost but not exceeding the amount needed to repair or replace subject to the following:

     (1) Our limit of liability for loss to Personal Property shall not exceed the smallest of the following:

       (a) Replacement cost with a similar item of like kind and quality at the time of loss;

       (b) The full cost of repair;

       (c) Any special limit of liability described in the policy or stated in this endorsement; or

       (d) The Coverage C limit of liability stated in the declarations, as modified by the Inflation Protection of the policy.

     (2) This endorsement shall not apply to:

       (a) Fine arts and items which, by their nature cannot be replaced with new items;

       (b) Articles whose age or history contribute substantially to their value including souvenirs or collector's items.

       (c) Property that is unusable for the purpose for which it was originally intended due to age or historic condition.

     (3) We will not pay for any loss to personal property under this endorsement until actual repair or replacement is complete.

   d. You may disregard the replacement cost provision and make a claim for loss of or damage to property on an actual cash value basis and then make claim within 180 days after loss for additional liability under this endorsement.

## C. INCREASED LIMIT - COVERAGE D

We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2 and 3 of Coverage D - Loss of Use.

## D. ADDITIONAL COVERAGES

### REFRIGERATORS AND FREEZERS CONTENTS COVERAGE

We cover the contents of deep freeze or refrigerated units on the residence premises from the perils of:

1. Fluctuation or total interruption of electric power, either on or off premises, resulting from conditions beyond the control of the "insured".

2. Mechanical breakdown of any refrigeration equipment on premises including the blowing of fuses or circuit breakers.

We do not cover loss caused by the following additional exclusions:

1. Disconnection or termination of power due to turning off any switch.

2. Inability of power source to provide sufficient power due to government order, lack of fuel or lack of generating capacity to meet demand.

SPECIAL LIMIT - We will not pay more than $500 of your loss of refrigerator or freezer contents resulting from the above perils.

All other provisions of this policy apply.

### LOCK REPLACEMENT COVERAGE

We will pay up to $250 for replacing the locks or cylinders on the exterior doors of the residence premises when your keys have been stolen. The theft of the keys must be reported to the police for this coverage to apply.

This coverage is additional insurance. No deductible applies to this coverage.

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 24 of 91 PageID #: 71

## BACK UP OF SEWER AND SUMP PUMP OVERFLOW COVERAGE ENDORSEMENT
### (This is not Flood Insurance)

This endorsement modifies such insurance as is afforded by this policy.

## DEFINITIONS

The following definition is added:

The term "flood" as used in this endorsement means a general and temporary condition of partial or complete inundation of normally dry land areas from:

1. the unusual and rapid accumulation of runoff of surface waters from any source;

2. the overflow of inland or tidal waters;

3. waves, tides or tidal waves; or

4. spray from any of these, whether or not driven by wind.

## PERILS INSURED AGAINST - SECTION I

For an additional premium, we cover risks of direct physical loss to property described in Coverage A - Dwelling and Coverage C - Personal Property described below when caused by a peril listed below, unless the loss is excluded in this policy.

1. Sewer Back-up, meaning only direct loss to covered property caused by effluent which backs up through sewers or drains which are a part of the "residence premises".

2. Sump Pump Overflow, meaning only direct loss to covered property caused by water which overflows or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system, or other type system designed to remove subsurface water from the foundation area of the "residence premises."

Direct physical loss caused by water which backs up through sewers or drains due to the mechanical failure of a sump pump, sump pump well, sump pump well discharge system or other type system designed to remove subsurface water from the foundation area of the "residence premises" is covered.

This coverage does not apply if the loss is caused by the negligence of any insured.

## PROPERTY COVERAGES - SECTION I

The coverage provided by this endorsement only applies to the dwelling described in Coverage A and the following Coverage C personal property items:

- Clothes washers and dryers
- Food freezers and the food in them
- Refrigerators
- Ranges
- Portable dishwashers
- Dehumidifiers

## EXCLUSIONS - SECTION I

With respect to the coverages provided by this endorsement only, the following exclusions under Section I - Exclusions are deleted:

Water which backs up through sewers or drains or which overflows from a sump pump.

Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

## DEDUCTIBLE

Each claim for loss to covered property will be adjusted separately. A $1000 deductible applies to each covered loss under this endorsement. All other provisions of this policy apply.

## LIMIT OF LIABILITY

We will pay no more than the amount shown on the policy declarations for this coverage for any one loss caused by sewer back up or sump pump overflow as described above.


Liberty Mutual.

# LibertyGuard

## Deluxe Homeowners Policy

Please read your policy and each endorsement carefully.

To serve you best...

Liberty Mutual has over 350 service offices throughout the United States and Canada. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

THIS POLICY IS NON ASSESSABLE

Liberty Mutual Group

FMHO 943 (ED. 11-96)                                    PF

# LIBERTYGUARD DELUXE HOMEOWNERS POLICY

## HO 00 03 EDITION 04 91

## TABLE OF CONTENTS

| | Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**SECTION I - PROPERTY COVERAGES**

| | |
|---|---|
| Coverage A Dwelling | 1 |
| Coverage B Other Structures | 2 |
| Coverage C Personal Property | 2 |
| Coverage D Loss of Use | 3 |
| Additional Coverages | 3 |
|   Debris Removal | 3-4 |
|   Reasonable Repairs | 4 |
|   Trees, Shrubs and Other Plants | 4 |
|   Fire Department Service Charge | 4 |
|   Property Removed | 4 |
|   Credit Card, Fund Transfer Card, Forgery and Counterfeit Money | 4 |
|   Loss Assessment | 4-5 |
|   Collapse | 5 |
|   Glass or Safety Glazing Material | 5 |
|   Landlord's Furnishings | 5-6 |

**SECTION I - PERILS INSURED AGAINST**

| | |
|---|---|
| Coverage A Dwelling and Coverage B Other Structures | 6 |
| Coverage C Personal Property | 6-7 |

**SECTION I - EXCLUSIONS**

| | |
|---|---|
| Ordinance or Law | 7 |
| Earth Movement | 7-8 |
| Water Damage | 8 |
| Power Failure | 8 |
| Neglect | 8 |
| War | 8 |
| Nuclear Hazard | 8 |
| Intentional Loss | 8 |
| Weather Conditions | 8 |
| Acts or Decisions | 8 |
| Faulty, Inadequate or Defective | 8 |

**SECTION I - CONDITIONS**

| | |
|---|---|
| Insurable Interest and Limit of Liability | 8 |
| Your Duties After Loss | 8-9 |
| Loss Settlement | 9-10 |
| Loss to a Pair or Set | 10 |
| Glass Replacement | 10 |

| | Page |
|---|---|
| Appraisal | 10 |
| Other Insurance | 10 |
| Suit Against Us | 10 |
| Our Option | 10 |
| Loss Payment | 10 |
| Abandonment of Property | 10 |
| Mortgage Clause | 10 |
| No Benefit To Bailee | 10 |
| Nuclear Hazard Clause | 10-11 |
| Recovered Property | 11 |
| Volcanic Eruption Period | 11 |

**SECTION II - LIABILITY COVERAGES**

| | |
|---|---|
| Coverage E Personal Liability | 11 |
| Coverage F Medical Payments to Others | 11 |

**SECTION II - EXCLUSIONS**

| | |
|---|---|
| Coverage E Personal Liability and Coverage F Medical Payments to Others | 11-12 |
| Coverage E Personal Liability | 12-13 |
| Coverage F Medical Payments to Others | 13 |

**SECTION II - ADDITIONAL COVERAGES**

| | |
|---|---|
| Claim Expenses | 13 |
| First Aid Expenses | 13 |
| Damage to Property of Others | 13-14 |
| Loss Assessment | 14 |

**SECTION II - CONDITIONS**

| | |
|---|---|
| Limit of Liability | 14 |
| Severability of Insurance | 14 |
| Duties After Loss | 14-15 |
| Duties of an Injured Person | 15 |
| Payment of Claim | 15 |
| Suit Against Us | 15 |
| Bankruptcy of an Insured | 15 |
| Other Insurance | 15 |

**SECTIONS I AND II - CONDITIONS**

| | |
|---|---|
| Policy Period | 15 |
| Concealment or Fraud | 15 |
| Liberalization Clause | 15 |
| Waiver or Change of Policy Provisions | 15 |
| Cancellation | 15-16 |
| Non-Renewal | 16 |
| Assignment | 16 |
| Subrogation | 16 |
| Death | 16 |
| **\*MUTUAL POLICY CONDITIONS** | 16 |

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

1

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 28 of 91 PageID #: 75

## COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured"; ·

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollow-ware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances.

   This includes:

   a. Their equipment and accessories; or

   · b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

2

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

## COVERAGE D - Loss Of Use

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

**Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

a. Your tree(s) felled by the peril of Windstorm or Hail;

b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

3

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 30 of 91 PageID #: 77

provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

   We do not cover use of a credit card or fund transfer card:

   a. By a resident of your household;

   b. By a person who has been entrusted with either type of card; or

   c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   We do not cover loss arising out of "business" use or dishonesty of an "insured."

   This coverage is additional insurance. No deductible applies to this coverage.

   Defense:

   a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

4

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of contents, equipment, animals or people;

   e. Weight of rain which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

   We cover:

   a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

   b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

   a. **Fire or lightning.**

   b. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   c. **Explosion.**

   d. **Riot or civil commotion.**

   e. **Aircraft,** including self-propelled missiles and spacecraft.

   f. **Vehicles.**

   g. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

   h. **Vandalism or malicious mischief.**

   i. **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

   j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

   k. **Accidental discharge or overflow of** water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

   This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

   In this peril, a plumbing system does not include a sump, sump pump or related equipment.

5

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

| SECTION I – PERILS INSURED AGAINST |
| --- |

## COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

     (1) Maintain heat in the building; or

     (2) Shut off the water supply and drain the system and appliances of water;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

     (1) Fence, pavement, patio or swimming pool;

     (2) Foundation, retaining wall, or bulkhead; or

     (3) Pier, wharf or dock;

   c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   e. Any of the following:

     (1) Wear and tear, marring, deterioration;

     (2) Inherent vice, latent defect, mechanical breakdown;

     (3) Smog, rust or other corrosion, mold, wet or dry rot;

     (4) Smoke from agricultural smudging or industrial operations;

     (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

     (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pave-ments, patios, foundations, walls, floors, roofs or ceilings;

     (7) Birds, vermin, rodents, or insects; or

     (8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I – Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C – PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

1. **Fire or lightning.**

6

2. Windstorm or hail.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief.

9. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured" except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. Falling objects.

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. Weight of ice, snow or sleet which causes damage to property contained in a building.

12. Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. Sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. Sudden and accidental damage from artificially generated electrical current.

This peril does not include loss to a tube, transistor or similar electronic component.

16. Volcanic eruption other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption;

7

landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) Fire;

(2) Explosion; or

(3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, re-pair, construction, renovation, remodel-ing, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

8

f. As often as we reasonably require:

   (1) Show the damaged property;

   (2) Provide us with records and documents we request and permit us to make copies; and

   (3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) The time and cause of loss;

   (2) The interest of the "insured" and all others in the property involved and all liens on the property;

   (3) Other insurance which may cover the loss;

   (4) Changes in title or occupancy of the property during the term of the policy;

   (5) Specifications of damaged buildings and detailed repair estimates;

   (6) The inventory of damaged personal property described in 2.e. above;

   (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   (8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

   (1) Personal property;

   (2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

   (3) Structures that are not buildings;

at actual cash value at the time of loss, but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

     (a) The limit of liability under this policy that applies to the building;

     (b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

     (c) The necessary amount actually spent to repair or replace the damaged building.

   (2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

     (a) The actual cash value of that part of the building damaged; or

     (b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

   (3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

     (a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest base-ment floor;

     (b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

     (c) Underground flues, pipes, wiring and drains.

   (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

     (a) Less than 5% of the amount of insurance in this policy on the building; and

     (b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

9

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss·or damage to buildings on an actual cash value basis. ·You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set**. In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement**. Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal**. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance**. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us**. No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option**. If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your ·proof of loss and:

   a. Reach an agreement with you;

   b. There is an entry of a final judgement; or

   c. There is a filing of an appraisal award with us.

11. **Abandonment of Property**. We need not accept any property abandoned by an "insured."

12. **Mortgage Clause**.

   The word "mortgagee" includes trustee.

   If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

   If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

   If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee**. We will not recognize any assignment or grant any coverage that benefits a person or·organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause**.

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or un-controlled or however caused, or any consequence of any of these.

10

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

b. Is caused by the activities of an "insured";

c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

a. Which is expected or intended by the "insured";

b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured"; that is not an "insured location";

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

11

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 38 of 91 PageID #: 85

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

    (a) Not owned by an "insured"; or

    (b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

    (a) Used to service an "insured's" residence;

    (b) Designed for assisting the handicapped; or

    (c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

    (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

    (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

    (c) One or more outboard engines or motors with 25 total horsepower or less;

    (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

    (e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

        (1) You acquire them prior to the policy period; and

            (a) You declare them at policy inception; or

            (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

        (ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

    (a) Less than 26 feet in overall length;

    (b) 26 feet or more in overall length, not owned by or rented to an "insured."

(3) That are stored;

h. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

12

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

    (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

    unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

    (1) Voluntarily provided; or

    (2) Required to be provided;

    by the "insured" under any:

    (1) Workers' compensation law;

    (2) Non-occupational disability law; or

    (3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

    (1) Is also an insured under a nuclear energy liability policy; or

    (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

    (1) American Nuclear Insurers;

    (2) Mutual Atomic Energy Liability Under-writers;

    (3) Nuclear Insurance Association of Canada;

    or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

    (1) Occurs off the "insured location"; and

    (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

b. To any person eligible to receive benefits:

    (1) Voluntarily provided; or

    (2) Required to be provided;

    under any:

    (1) Workers' compensation law;

    (2) Non-occupational disability law; or

    (3) Occupational disease law;

c. From any:

    (1) Nuclear reaction;

    (2) Nuclear radiation; or

    (3) Radioactive contamination;

    all whether controlled or uncontrolled or however caused; or

    (4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I of this policy;

13

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

    (1) A "business" engaged in by an "insured";

    (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

    (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

        This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured.".

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

    (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

    (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

---

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

    Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

    (1) The identity of the policy and "insured";

    (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

    (3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

c. At our request, help us:

    (1) To make settlement;

    (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

    (3) With the conduct of suits and attend hearings and trials; and

    (4) To secure and give evidence and obtain the attendance of witnesses;

14

d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

| SECTIONS I AND II -CONDITIONS |
|---|

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**
A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(b) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 42 of 91 PageID #: 89

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

---

### *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

SECRETARY                    PRESIDENT

Includes copyrighted material of Insurance Services Office,
with its permission.
Copyright, Insurance Services Office, Inc., 1990

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 43 of 91 PageID #: 90

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – TENNESSEE

### SECTION I – PROPERTY COVERAGES

#### COVERAGE C – Personal Property

**Special Limits of Liability**

Items **10.** and **11.** are deleted and replaced by the following (These are items **7.** and **8.** in form HO 00 08):

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

  a. Accessories and antennas; or

  b. Tapes, wires, records, discs or other media;

  for use with any electronic apparatus described in this item **10.**

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

  a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

  b. Is away from the "residence premises"; and

  c. Is used at any time or in any manner for any "business" purpose.

  Electronic apparatus includes:

  a. Accessories and antennas; or

  b. Tapes, wires, records, discs or other media;

  for use with any electronic apparatus described in this item **11.**

**Property Not Covered**

Item **3.b.** is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

  b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

  (1) Accessories or antennas; or

  (2) Tapes, wires, records, discs or other media;

  for use with any electronic apparatus described in this item **3.b.**

  The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

  a. Used to service an "insured's" residence; or

  b. Designed for assisting the handicapped;

#### COVERAGE D – Loss of Use

For all forms other than HO 00 04 and HO 00 06, item **1.** is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

  Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For forms HO 00 04 and HO 00 06, item **1.** is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

  Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 44 of 91 PageID #: 91

ADDITIONAL COVERAGES

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass or Safety Glazing Material**

   a. We cover:

     (1) For all forms other than HO 00 04 and HO 00 06, the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

       (a) Form HO 00 04, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

       (b) Form HO 00 06, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

     (2) For all forms other than HO 00 04 and HO 00 06, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

       (a) Form HO 00 04, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

       (b) Form HO 00 06, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

     (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   b. This coverage does not include loss:

     (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

     (2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this ADDITIONAL COVERAGE 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For forms HO 00 01 and HO 00 08, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage 8. in forms HO 00 01 and HO 00 08.)

The following ADDITIONAL COVERAGE is added to all forms except HO 00 08. With respect to form HO 00 04, the words 'covered building' used below, refer to property covered under ADDITIONAL COVERAGE 10. Building Additions and Alterations.

11. **Ordinance or Law**

   a. You may use up to 10% of the limit of liability that applies to COVERAGE A (or for form HO 00 04, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

     (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a PERIL INSURED AGAINST;

     (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a PERIL INSURED AGAINST to another part of that covered building or other structure; or

     (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a PERIL INSURED AGAINST.

Copyright, Insurance Services Office, Inc., 1994

HO 01 41 10 94

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for,. monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is ADDITIONAL COVERAGE 10. in forms HO 00 01 and HO 00 06.)

SECTION I – EXCLUSIONS

1. Ordinance or Law is deleted and replaced by the following:

1. Ordinance or Law, meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion 1.a. in all forms other than HO 00 03, and 1.a.(1) in form HO 00 03, does not apply to the amount of coverage that may be provided for under ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is exclusion 1.a. in form HO 00 03.)

2. Earth Movement is deleted and replaced by the following:

2. Earth Movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

a. Fire; or

b. Explosion;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

(This is exclusion 1.b. in form HO 00 03.)

4. Power Failure is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises." But if the failure of power or other utility service results in a loss, from a PERIL INSURED AGAINST on the "residence premises," we will pay for the loss or damage caused by that PERIL INSURED AGAINST.

(This is exclusion 1.d. in form HO 00 03.)

SECTION I – CONDITIONS

3. Loss Settlement. Under form HO 00 06, item b.(2) is deleted and replaced by the following:

(2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

SECTION II – EXCLUSIONS

Under 1. COVERAGE E – Personal Liability and COVERAGE F – Medical Payments to Others; item a. is deleted and replaced by the following:

a. Which is expected or intended by one or more "insureds";

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 46 of 91 PageID #: 93

SECTIONS I AND II – CONDITIONS

2. Concealment or Fraud is deleted and replaced by the following:

2. Concealment or Fraud

   a. Under SECTION I – PROPERTY COVER-AGES, with respect to all "insureds" covered under this policy, we provide no coverage for loss under SECTION I – PROPERTY COV-ERAGES if, whether before or after a loss, one or more "insureds" have:

     (1) Intentionally concealed or misrepresented any material fact or circumstance;

     (2) Engaged in fraudulent conduct; or

     (3) Made false statements;

    relating to this insurance.

   b. Under SECTION II – LIABILITY COVER-AGES, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

     (1) Intentionally concealed or misrepresented any material fact or circumstance;

     (2) Engaged in fraudulent conduct; or

     (3) Made false statements;

    relating to this insurance.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1994

HO 01 41 10 94

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 47 of 91 PageID #: 94



# ARSON REWARD

The following Additional Coverage is added to SECTION I - PROPERTY COVERAGES, Additional Coverages:

**Arson Reward.** We will pay up to $5,000 for information which leads to an arson conviction in connection with a fire loss covered by this policy. Regardless of the number of persons providing information, our limit shall not be increased. This $5,000 limit is in addition to the limit of liability applicable to the damaged or destroyed property.

Liberty Mutual Insurance Group

FMHO 993

PF

 **Liberty Mutual.**
INSURANCE

# AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

*THIS ENDORSEMENT SUPERSEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS*

### SECTION I - PROPERTY COVERAGES

**COVERAGE A - Dwelling**
Item 1. is amended as follows:
We cover:
1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling, and attached wall-to-wall carpeting;

**COVERAGE C - Personal Property**

The introductory paragraph of **Special Limits of Liability** is amended to read:

These do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category. . If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply.

The following limits are added:
12. $5000 on electronic data processing system equipment and the recording or storage media or accessories used with that equipment.

13. $5000 on any one article and $10000 in the aggregate for loss by theft of any rug, carpet (excluding attached wall-to-wall carpet), tapestry, wall-hanging or other similar article.

14. $2500 in the aggregate for loss of any of the following whether or not they are part of a collection: trading cards, comic books, figurines, stamps, advertising materials, stuffed animals, dolls, sports and entertainment memorabilia, toys, games, militaria, and books.

15. $1200 for any one electrical appliance for loss by sudden and accidental damage from artificially generated electrical currents. This special limit does not apply to electronic data processing equipment or storage media.

**Property Not Covered** under **COVERAGE C - Personal Property**

The final two subparagraphs of Item 3 (a. and b.) are replaced by the following:

We do cover vehicles or conveyances not subject to motor vehicle registration which are:
a. Used solely to service an "insured's" residence; or
b. Designed for assisting the handicapped;

Item 10. is added as personal property items not covered.
10. Water or steam

**ADDITIONAL COVERAGES** is revised as follows:

Item 7. **Loss Assessment** is deleted in its entirety.

The following is added to Item 8. **Collapse.**
With respect to this Additional Coverage:
(1) Collapse means the sudden and entire falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied or used for its current intended purpose.
(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

Item 10. **Landlord's Furnishings** is deleted in its entirety.

### SECTION I - PERILS INSURED AGAINST

**COVERAGE A - DWELLING and COVERAGE**

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 49 of 91 PageID #: 96



**B - OTHER STRUCTURES**
The following is added to item 2.b.
    (4) Footing(s)

The following are added to item 2.e. Any of the following:
    (10) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;

The final paragraph of Item 2. is further revised as follows:
If any of these cause sudden and accidental water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

**SECTION II - EXCLUSIONS**

Item **1.a.** under **Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** is amended as follows:

Which is expected or intended by the "insured", even if the resulting "bodily injury" or "property damage"
    (1) is of a different kind, quality, or degree than initially expected or intended; or
    (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.
However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**SECTION II - ADDITIONAL COVERAGES**
Item **1.c** . under Claims Expenses is amended as follows:

Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit.

Item **4. Loss Assessment** is deleted in its entirety.

All other policy terms and conditions apply.

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 50 of 91 PageID #: 97

# PREMISES ALARM OR
# FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 51 of 91 PageID #: 98



## LEAD POISONING EXCLUSION ENDORSEMENT

The following provisions are added to and made part of your Homeowners Policy:

Section I - Property Coverages do not apply to any costs or expenses incurred or loss arising out of:

1. the removal, testing for, monitoring, clean-up, abatement, treatment, or neutralization of lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead, or;

2. any governmental direction or other request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage:

1. arising out of lead paint, plaster or putty containing lead; soil or earth containing lead or any other material or substance containing lead, or;

2. any costs or expenses incurred or loss arising out of any claim, governmental direction, or request that you test for, monitor, clean-up, remove, abate, contain, treat or neutralize lead; paint, putty or plaster containing lead; soil or earth containing lead; or any other substance or material containing lead.

This exclusion applies to any obligation to share damages, costs or expenses with someone else or to repay someone else who must pay damages, costs or expenses.

FMHO 976 (Ed. 5-92)                    LIBERTY MUTUAL GROUP                    Page 1 of 1

## NO SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## LIMITED SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II – Exclusions;

2. Does not provide Section I – Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C – Special Limits of Liability – item 8. imposes that limit on "business" property on the "residence premises." (Item 8. corresponds to item 5. in Form HO 00 08.);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C – Special Limits of Liability – item 9. imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. and 11. (Items 9., 10. and 11. correspond to items 6., 7. and 8. respectively in Form HO 00 08.)

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 53 of 91 PageID #: 100



# UNDERGROUND FUEL STORAGE TANK EXCLUSION

The following provision is added to and made part of your Homeowners Policy:

Section II – Exclusions

The Paragraph below is added:

Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":

    arising out of the release of fuel or fuel products from an "underground storage tank system."

    "Underground storage tank system" means the underground tank, the fill pipe, the vent pipes, and all associated fixtures, including pipe and tubing which contains or conveys fuel or fuel products from the underground storage tank to the point of combustion.

All other provisions of this policy apply.

FMHO 1097 (Ed. 1-97)          Liberty Mutual Group          PF

# AMENDATORY MOLD, FUNGUS, WET ROT, DRY ROT, BACTERIA, OR VIRUS ENDORSEMENT
This endorsement changes your policy. Please read it carefully.

**DEFINITIONS**
The following definition is added:
9. "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" means any type or form of fungus, rot, virus or bacteria. This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or viruses.

**SECTION I - PROPERTY COVERAGES**
Additional Coverages
The following Additional Coverage is added:

11. Remediation of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" Resulting Directly From A Covered Water Loss

We will pay up to $5,000 for the "Remediation" of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" resulting directly from a covered water loss. We will pay no more than $5,000 for this coverage during the policy period, regardless of the number of water damage losses or claims submitted.

"Remediation" means the reasonable and necessary treatment, containment, decontamination, removal or disposal of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" as required to complete the repair or replacement of property, covered under Section I of the policy, that is damaged by a covered water loss. "Remediation" includes payment for any loss of fair rental value, or reasonable increase in additional living expenses that is necessary to maintain your normal standard of living, if "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" resulting from a covered water loss makes your residence premises uninhabitable. "Remediation" includes testing or investigation to detect, evaluate or measure "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus".

This Additional Coverage does not increase the limits of liability under Section I of the policy.

**SECTION I - PERILS INSURED AGAINST**
Coverage A - Dwelling and Coverage B - Other Structures
Paragraph 2.e. (3) is deleted and replaced by the following:
(3) Smog, rust or other corrosion;

Paragraph 2.e. (9) is added:
(9) Seepage, meaning continuous or repeated seepage or leakage of water, steam or fuel over a period of weeks, months or years:
a) From a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
b) From within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures, including walls, ceilings or floors.

**SECTION I - EXCLUSIONS**
Exclusion 1.i. is added:
i. Except as provided by Additional Coverage 11., damage caused by "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus" is excluded, even if resulting from a peril insured against under Section I. We do not cover "Remediation" of "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus", even if resulting from a peril insured against under Section I. except as provided by Additional Coverage 11..

**SECTION II - EXCLUSIONS**
Coverage E - Personal Liability and Coverage F - Medical Payments to Others
Exclusion 1.m. is added:
m. Arising out of or aggravated by, in whole or in part, "Mold, Fungus, Wet Rot, Dry Rot, Bacteria, or Virus".

FMHO 2199 R1                                                                                                    PF



# INFLATION PROTECTION ENDORSEMENT

It is agreed that the limits of liability for:

Coverage A, Dwelling;

Coverage B, Structure;

Coverage C, Personal Property;

and Coverage D, Loss of Use,

shall be raised by the rate of increase in the latest available information on residential building cost inflation.

## METHOD

To find the limits of liability on a given date, the Index Level the Company assigns to that date will be divided by the Index Level for the effective date of this Endorsement. This Factor is then multiplied by the limit for Coverages A, B, C and D separately.

If during this policy's term the Coverage A limit is changed at the insured's request, the effective date of this Endorsement is amended to the effective date of such change.

This Endorsement shall not reduce the limits of liability to less than the amount shown on:

a. The policy; or

b. The most recent Homeowners Policy Renewal Declaration.

This Endorsement must be attached to Change Endorsement when issued after the policy is written.

Case 3:13-cv-00707   Document 1-2   Filed 07/18/13   Page 56 of 91 PageID #: 103

# EDUCATION COVERAGE ENDORSEMENT

We cover up to $5,000 for property owned by a school, while such property is in the possession of a named insured and being used in the course of employment, which is damaged by a Peril Insured Against and for which the named insured is held responsible by the school.

This additional coverage does not apply to:

1.  Money, bank notes, bullion, gold, silver, platinum, coins or medals;

2.  The legal obligation of an insured to pay because of the theft or unauthorized use of credit cards in the insured's possession;

3.  Business data, including such data stored in:

    a.  Books of account, drawing, or other paper records; or

    b.  Electronic data processing tapes, wires, records, discs or other software media.

    However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

4.  Manuscripts

This additional coverage does not increase the limit of liability for Coverage C - Personal Property. A $50 deductible applies to losses under this additional coverage. This insurance is excess over other valid and collectible insurance that applies to the school property.

All other provisions of the policy apply.

FMHO 2357                         Liberty Mutual Group                                    PF



Liberty Insurance Corporation
Southern Region
PO Box 100131
Marietta, GA 30061-7031
Office: (800) 318-6572
Fax: (866) 644-9464

FILED
WILLIAMSON COUNTY
CLERK & MASTER

2013 MAY 29 PM 12: 29

ENTERED_____

December 21, 2012

Micah Jackson
605 Quarter Horse Ln
Nolensville, TN 37135-9764

Claim Number: 024093451-01
Date of Loss:  3/1/2011

Dear Ms. Jackson,

As we recently discussed, we have completed our investigation of your homeowner's claim, which revealed settlement cracks and settlement damage to the home.

After a careful investigation of your claim, we have determined that your policy does not afford coverage for settlement damage.

The applicable policy provisions are as follows:

under **SECTION I - PERILS INSURED AGAINST:**

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

>*"We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:*

>*2. Caused by: ...*
>>*e. any of the following:*
>>>*(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;"*

Additionally, your Homeowner Policy states under **SECTION I - EXCLUSIONS:**

1.  *" We do not insured for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.*

EXHIBIT
2

b. *EARTH MOVEMENT, meaning earthquake including land shock waves or tremors before, during, or after a volcanic eruption, landslide; mine subsidence mudflow; earth sinking, rising or shifting; unless direct loss by:*
   (1) *Fire;*
   (2) *Explosion; or*
   (3) *Breakage of glass or safety glazing material which is part of a building, storm door or storm window;*

   *ensues and then we will pay only for the ensuing loss.*

2. *We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.*

   a. **Weather conditions.** *However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss.*

   C. **Faulty, inadequate, or defective:**
      (1) *Planning, zoning, development, surveying, siting;*
      (2) *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*
      (3) *Materials used in repair, construction, renovation or remodeling; or*
      (4) *Maintenance;*
         *of part or all of any property whether on or off the "residence premises."*

Our coverage position is premised upon our investigation, presently known facts and the terms of your policy. If you have any questions or have other information which might be used to reconsider our coverage decision, please call me at the number provided below or my supervisor, Rob Arnett, at (615) 440-6691. If you prefer to communicate by email, my address is listed below. When contacting me by email, please include your claim number in the subject line.

Thank you for insuring with Liberty Mutual Insurance. We appreciate your business.

Sincerely,


Christopher Gurley
Homeowner Claims Department
Tel: (615) 668-0522
Fax: (866) 644-9464
Email: christopher.gurley@libertymutual.com


*While we have attempted to address all of the coverage considerations related to this claim, Liberty Mutual reserves all rights under applicable law and the policy. This letter should in no way be construed as a waiver or estoppel of any of the possible coverage defenses afforded by the policy or applicable law.*

Helping People Live Safer More Secure Lives                                    HO_FD

FILED
WILLIAMSON COUNTY
CLERK & MASTER
2013 MAR 29 PM 1:29

ENTERED



# MARSHALL THOMAS
## ATTORNEYS AT LAW

214 WEST MAIN STREET
MURFREESBORO, TN 37130
TELEPHONE: (615) 896-8000
FACSIMILE: (615) 896-8088

March 1, 2013

<u>SENT VIA FACSIMILE (866) 644-9464 AND U.S. MAIL</u>
Liberty Mutual Insurance Corporation
Mr. Christopher Gurley
Homeowner Claims Department
P.O. Box 100131
Marietta, GA 30061-7031

Re:  Insured:   Jeff and Micah Jackson
     Address:   605 Quarter Horse Lane
                Nolensville, TN 37135
     Claim No.: 024093451-01

Dear Mr. Gurley:

I represent Jeff and Micah Jackson with regards to their insurance claim to Liberty Mutual Group ("Liberty Mutual") for possible sinkhole damages that occurred at their home. As you are aware, my client contracted with Liberty Mutual for a Homeowner's Insurance Policy ("Policy") and this Policy was in full force and effect at the time of the loss.

My clients' home was severely damaged, and they contacted Liberty Mutual to report the loss that occurred to the structure of their home. My client was sent a letter from you dated December 21, 2012, informing them that Liberty Mutual would be denying their claim based on their Homeowner's Policy Provisions. However, to our knowledge, no investigation or assessment by Liberty Mutual was completed. If an investigation was completed, please provide any documentation regarding this to my office at 214 West Main Street, Murfreesboro, TN 37130. Otherwise, we would request that you re-evaluate this claim. I would also request that you provide a certified copy of my client's Policy to my office.

If we have not received a satisfactory response by March 15, 2013, my clients have given me the authority to proceed with whatever legal action is necessary to resolve this matter including seeking attorney's fees and expenses if appropriate. This letter also serves as a written demand and notice that failure to pay the claim may result in a pursuit of the bad-faith penalty in court pursuant to Tenn. Code Ann. § 56-7-105.



EXHIBIT
3

Thank you for your immediate attention to this matter.

Sincerely,

*Sonya S. Wright*

Sonya S. Wright





FILED
WILLIAMSON COUNTY
CLERK & MASTER

2013 MAY 29 PM 12:28

ENTERED

Liberty Mutual
Insurance
P.O. Box 100131
Marietta, GA 30061
Telephone: 615-668-0522
Fax: 1-866-644-9464

March 7, 2013

Marshall Thomas Burnett
Attorneys at Law
214 West Main Street
Murfreesboro, TN 37130
Attn: Sonya S. Wright

RE: Micah Jackson
Claim #: HD520-024093451-0001
Date of Loss: 03/01/2011

Ms. Wright

Allow this letter to serve as a response to your letter dated March 1, 2013 advising that your firm is now representing Mrs. Micah Jackson regarding the above claim.

A Certified policy and Dec. pages have been requested which will be mailed to your office in separate cover.

We have reopened our claim file and assigned Rimkus Consulting Group to conduct further investigation at the 605 Quarter Horse Lane, Nolensville, TN 37135 residence. Once we receive Rimkus Consulting Group's engineering report, we will share their conclusions.

Furthermore, it is essential that Liberty Mutual have all available information that may be relevant to this claim. Therefore, if you have any information that may be relevant, including but not limited to expert opinions or reports concerning the cause of the reported damage, please provide this information immediately so it may be considered. Please note that providing information relevant to the claim is a Condition of the insurance policy, and the request of Liberty Mutual for this information is made pursuant to the following policy provisions:

SECTION I – CONDITIONS
2. Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:

f. As often as we reasonably require:

(2) Provide us with records and documents we request and permit us to make copies;

Additionally, if at any time new information develops which you believe is contrary to the



EXHIBIT
4

information we have gathered during our investigation, we ask that you submit this information to us immediately for our review and consideration. This request by Liberty Mutual is also made pursuant to the policy provisions outlined above

Liberty Mutual does not intend by this letter to waive any policy provisions or defenses and specifically reserves its right to assert such additional policy defenses at any time.

If you have any questions or have other information which you wish to share, please call me at 615-668-0522. My internet address is Christopher.gurley@libertymutual.com.

Sincerely,

Christopher Gurley
Sr. Property Loss Specialist II

FILED
WILLIAMSON COUNTY
CLERK & MASTER
2013 MAY 29 PM 12:28
ENTERED

# MARSHALL THOMAS BURNETT
## ATTORNEYS AT LAW

### 214 WEST MAIN STREET
### MURFREESBORO, TN 37130
### TELEPHONE: (615) 896-8000
### FACSIMILE: (615) 896-8088

April 9, 2013

Liberty Mutual Insurance Corporation
Mr. Christopher Gurley
Homeowner Claims Department
P.O. Box 100131
Marietta, GA 30061-7031

Re:  Insured:  Jeff and Micah Jackson
     Address:  605 Quarter Horse Lane
               Nolensville, TN 37135
     Claim No.:  024093451-01

Dear Mr. Gurley:

We received a copy of the Jacksons' home policy in the mail at our Florida office on April 2, 2013. Please confirm whether or not the policy sent is a certified copy of the policy. If it is, we ask that you send a certification or correspondence confirming this.

If this is not a certified copy, please forward the certified copy of the policy and endorsements to our office by April 23, 2013. Also, moving forward, please send all correspondence to our Tennessee office located at 214 West Main Street, Murfreesboro, TN 37130.

Finally, it is my understanding that an engineer visited the Jacksons' home on March 15, 2013. Please provide a copy of the findings, any photographs, and a coverage determination to our office.

Thank you for your assistance with this matter. Please feel free to call my office at the number above if you have any questions.

Sincerely,

*Sonya S. Wright*

Sonya S. Wright

**EXHIBIT**
**5**

IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

MICAH JACKSON )
)
    Plaintiff, )
)
v. )    JURY DEMAND
)
LIBERTY MUTUAL GROUP, )    Case No.:
)
    Defendant. )
)

## PLAINTIFF'S INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS AND REQUESTS FOR ADMISSION TO DEFENDANT LIBERTY MUTUAL GROUP

Plaintiff, Micah Jackson, by and through her undersigned counsel and pursuant to Rules 26, 33, and 34 of the Tennessee Rules of Civil Procedure, hereby requests Defendant, Liberty Mutual Group, ("Liberty Mutual" or "Defendant"), produce for inspection, copying or photographing at Marshall Thomas Burnett, 214 West Main St., Murfreesboro, Tennessee 37130, within forty-five (45) days of receipt hereof, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the requests contained in the numbered paragraphs below:

I.    **DEFINITIONS**

A.    The terms "Defendant," "you," "your," or "yours" shall mean Liberty Mutual , its representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons or entities over whom it has control or have been hired, retained or employed by it to act on its behalf for any purpose whatsoever.

B.    The term "Plaintiff" shall mean Micah Jackson, her representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons or entities

1

over whom they have control or have been hired, retained or employed by them to act on her behalf for any purpose whatsoever.

C.      The term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

D.      The terms "identify" or "the identity of" or equivalent language with reference to a natural person shall mean to give his or her entire name, his or her last known residence address, and, if employed, the name and address of his or her employer and his or her job title or position. With reference to a person who is not an individual, such terms mean to state the full name and principal office address of such person.

E.      "Document" or "documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all writings, letters, telegrams, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to file, reports, pictures, photographs, tapes, memoranda, mechanical and electronic recordings or transcripts of same, blueprints, flow sheets, calendar or diary entries, memoranda of conversations, telephonic or otherwise, memoranda of meetings or conferences, studies, reports, interoffice and intraoffice communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, propositions, articles, announcements, newspaper clippings, books, records, tables, books of account, ledgers, vouchers, canceled checks, check stubs, invoices, bills, opinions, certificates, promissory notes and other evidence of indebtedness, and all drafts and copies of documents as hereinabove defined by whatever means made. If multiple copies of any documents exist, each copy which is in any way not completely identical to a copy which is referenced shall also be produced.

2

F.     The terms "the identity of" or to "identify" or equivalent language shall with reference to a document mean to:

(1)     Describe it in language which would be sufficient to obtain its production if used in a request for production directed to you;

(2)     State its customary business description, its nature and substance with sufficient particularity to enable it to be identified, its number (if any), and its date (if any);

(3)     Identify the person(s) who generated it and its current custodian(s).

II.   · <u>INTERROGATORIES</u>

1.     Identify the name, address, and title of the person or persons responding to these Interrogatories, the Requests for Production of Documents, and the Requests for Admissions?

ANSWER:

2.     For each person whom you expect to call as an expert witness at trial, state the complete name, address, and telephone number; the subject matter of testimony; the substance of facts and opinions to which expert is expected to testify; and the grounds for each opinion.

ANSWER:

3.     List by case name, court, and year each lawsuit where Liberty Mutual was alleged to have committed bad faith towards its insureds by either a judge or jury for the past five (5) years and state the outcome of each case.

ANSWER:

3

4.    List the names, addresses, and telephone numbers of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any issues raised by the pleadings in this matter, and specify the subject matter about which the person has knowledge.

ANSWER:

5.    Are you aware of any other alleged sinkhole activity that has been investigated by you or any other insurance carrier within a one-mile radius of the Plaintiff's property during the past five (5) years? If answering affirmatively, please identify the address(es) of the area investigated; the party, if you are aware, that conducted the investigation; whether or not the site contained a confirmed sinkhole; and whether or not the property was repaired, and if so, the method or repair.

ANSWER:

6.    Prior to your denial of Plaintiff's claim for insurance coverage, did you review any prior claims history to determine whether there have ever been any other investigations for sinkhole activity on nearby properties? If answering affirmatively, please identify the specific areas where the claims were filed, the engineering company retained by you to conduct the investigation for each such claim, and whether or not you provided coverage for the claim. (The term "nearby properties" is to include any property within a one-mile radius of the Plaintiff's home.)

ANSWER:

4

7.    At or before the Plaintiff's claim for insurance coverage was denied, do you contend that you ruled out the existence of sinkhole activity within a reasonable degree of scientific certainly? If answering negative, please identify the additional investigation you assert will be necessary to make such a determination and whether you intend on conducting this additional investigation. If answering in the affirmative, please specifically identify all facts and circumstance which you believe support such a contention and state whether you complied with the minimum standards for investigation of sinkhole claims set forth in Tenn. Code Ann. § 56-7-130.

ANSWER:


8.    List what electronically stored data and information that Defendant stores with regards to claims, where it is stored, how long it is stored, and who has access to the stored information.

ANSWER:


9.    State the facts and circumstances upon which you rely for any affirmative defense set forth in your Answer and Affirmative Defenses.

ANSWER:

5

10. Do you contend that anything other than a covered peril under the subject property insurance policy is, or may be, the cause, in whole or in part, of damage to the insured premises, for which claims have been asserted against you in this lawsuit? If so, state the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not you have previously notified Plaintiff of your contention.

ANSWER:


11. State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy, and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

ANSWER:


12. For each claim for insurance benefits submitted to you by Plaintiff during the past five (5) years, please state: (i) the date Plaintiff first reported the loss to you; (ii) the "date of loss" or date associated with the claim; (iii) whether the claim was denied; (iv) if any payment was tendered or offered, the amount and date of such payment or offer; and (v) the policy number, coverage limits and policy period of any insurance policy in effect at the time the claim was submitted.

ANSWER:


6

13.    Identify the facts and circumstances regarding all alleged or suspected sinkhole claims received by Defendant in Tennessee and the amount of money spent by Defendant to investigate claims or pay insureds for these claims in the past five (5) years, including whether these claims were denied or covered.

ANSWER:


14.    Identify the address of Defendant's home office, regional office and service office that would apply in this matter.

ANSWER:


15.    Please state whether you have any contract(s), whether for this specific investigation or globally for all investigations, with any expert that performed an investigation at Plaintiff's Property. If so, please identify the date such contract(s) were entered into and identify the contract(s)

ANSWER:


16.    Please state the amount of time you spent in investigating and deciding whether coverage should be conferred in the claim filed by Plaintiff involving the Property prior to issuing the denial letter dated December 21, 2012.

ANSWER:


7

17. If Request for Admission Number 10 is denied, please describe in detail the reason for the denial and what Defendant believes Plaintiff has not done.

ANSWER:

8

## VERIFICATION OF ANSWERS TO INTERROGATORIES

STATE OF _____ )
                                 )

COUNTY OF_____ )

    I, _____, hereby certify that I have answered the foregoing interrogatories and that my answers are true, correct, and accurate to the best of my knowledge, information, and belief.


                              _____
                              Liberty Mutual,

    Sworn to and subscribed before me this _____ day of _____, 2013.


                              _____
                              Notary Public


My commission expires:_____

9

## PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LIBERTY MUTUAL GROUP

Plaintiff, Micah Jackson, by and through her undersigned counsel and pursuant to Rules 33 and 34 of the Tennessee Rules of Civil Procedure, hereby requests Defendant, Liberty Mutual, produce for inspection, copying or photographing at Marshall Thomas Burnett, 214 West Main St., Murfreesboro, Tennessee 37130, within forty-five (45) days of receipt hereof, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the requests contained in the numbered paragraphs below:

### I. DEFINITIONS AND INSTRUCTIONS

A. As used herein, "Defendant," "you" or "your" shall mean Defendant, Liberty Mutual, its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B. As used herein, the term "document" or "documents" shall be defined to include any and all documents, memoranda (including written memoranda of telephone conversations, oral communications, discussions, agreements, acts or activities), letters, postcards, telegrams, messages (including telephone messages), facsimiles, intra- and interoffice communications, correspondence, handwritten and/or typewritten notes, pamphlets, diaries, records of any kind, sound recordings, contracts, agreements, books, letters, reports, catalogues, financial statements, receipts, invoices, billing statements (including credit card and telephone statements), purchase orders, proposals, affidavits, advertisements, solicitations, indices, data processing cards, other data processing materials, data, maps, directives, desk pads, calendars, scrap books, notebooks,

10

drawings, diagrams, sketches, statistical records, appointment books, diaries, computer printouts, data processing input and output, computer input and output, e-mail, microfilms, other records kept by electronic, photographic or mechanical means, and writing of every kind and character, including preliminary drafts and other copies of the foregoing, however produced or reproduced. If multiple copies of a document exist, each copy which is any way not completely identical to a copy which is being produced should also be produced.

C.     As employed herein, "all documents" shall refer to and shall include every document as above-defined, known to you and every such document or thing that can be located or discovered by reasonable diligent efforts, whether or not originally in your custody, possession or control.

D.     When producing the requested documents and things, please produce same as they are kept in the usual course or business or label them to correspond with the categories of this request for production.

E.     If you claim a privilege as to any documents or thing encompassed by this request for production, you are requested to make the claim expressly and describe the nature of the documents, communications or things not produced or disclosed in a manner that without revealing information itself privileged or protected, will enable the Plaintiff to assess the applicability of the privilege or protection claimed.

F.     The words "relating to" mean concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

## II.    REQUEST FOR PRODUCTION OF DOCUMENTS

1.    Produce any and all documents, including but not limited to notes, diaries, reports, drafts, charts, drawings, diagrams, or memoranda of any person who visited the Property and/or spoke with Plaintiff on behalf of Defendant.

RESPONSE:



2.    Produce the entire claims manual together with any other corporate policies or guidelines used by Liberty Mutual which describes in any form the method, manner or means of handling claims made under property insurance policies issued by Liberty Mutual which was in effect at the time the claim was made as referenced in this case.

RESPONSE:



3.    Produce any and all documents relating to or referencing the damage to Plaintiff's Property, which was recommended or considered by any individual or entity, and any related cost estimates or repair estimates in connection therewith.

RESPONSE:



4.    Produce Defendant's complete claims file relating to the claim at issue in this action whether such file is maintained in Defendant's field office, regional office, home office or any other office including without limitation.

12

a. All letters, memoranda, and other forms of written or computerized communication to or from any employee of the Defendant relating in any way to the processing of the claim at issue in this action; and

b. All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of Liberty Mutual relating in any way to the processing of the claim at issue in this action; and

c. All written or computerized communications and written or computerized records of oral communication between any employee of Liberty Mutual and Plaintiff or any witness aware of the sinkhole claim at the Plaintiff's property; and

d. All written or computerized communications and written or computerized records of oral communications between any employee of Liberty Mutual and any third party relating in any way to the claim at issue in this action; and

e. All written or computerized records of any investigation conducted in connection with the claim or claims at issue in this action; and

f. All written or computerized communications and written or computerized records of oral communications to or from any employee of Liberty Mutual relating in any way to the decision of how to handle the claim in this action; and

g. All other written or computerized documents pertaining to the claim at issue in this litigation; and

h. The file folders in which the preceding documents are kept.

RESPONSE:

13

5. Produce all documents relied upon, or responsive to any Interrogatory, Request for Production of Documents or Requests for Admissions that has been made by the Plaintiff.

RESPONSE:


6. Produce all documents, including but not limited to electronically stored data in a searchable PDF format, for any sinkhole claims that the Defendant has had within a one mile radius of the Plaintiff's property, not including the Plaintiff's property.

RESPONSE:


7. Produce all documents including but not limited to reports, electronic data, written correspondence, and email correspondence, between you and any party regarding the claim that is the subject matter of the Complaint.

RESPONSE:


8. Produce all training materials or documents that are provided to Defendant's agents or representatives regarding selling sinkhole coverage, investigating sinkhole claims, and making coverage determinations in Tennessee for the past ten years.

RESPONSE:


14

9.     Produce any and all documents and data in your possession regarding the costs to investigate a sinkhole claim in Tennessee, the costs to make repairs when a sinkhole has been identified, and the amount paid to the insured for confirmed sinkhole activity for the past ten years.

RESPONSE:


10.     For each claim in the past ten years, by any insured for sinkhole loss that you have denied or covered in the state of Tennessee, produce the claim file for each such claim.

RESPONSE:


11.     Produce all documents and file materials, maintained by you or your agent, including any report or other investigation, which was conducted prior to the issuance of insurance to Plaintiff.

RESPONSE:


12.     Produce a copy of your Certificate of Authority from the commissioner to conduct business within the state of Tennessee for 2010, 2011 and 2012. If you claim that you are exempt from this requirement, provide all documentations that you are properly licensed to conduct business in the state of Tennessee.

RESPONSE:


15

13.     Produce a copy of all documents that were submitted or filed by Defendant to the Tennessee Department of Commerce and Insurance or any other state or federal department related to Tenn. Code. Ann. § 56-7-130 or sinkhole coverage, including any amendments, supplements, or updates.

RESPONSE:


14.     Produce any documents, emails, bulletins, newsletters, or any other written form, related to Tenn. Code Ann. § 56-7-130 or sinkhole coverage that Defendant created, sent, received, or had in its possession prior to Plaintiff's claim, or during the course of Plaintiff's claim, including but not limited to, how to handle and investigate a sinkhole claim, how sinkhole coverage would be implemented in the state of Tennessee, and any other internal or external communications regarding sinkhole coverage in this State.

RESPONSE:


15.     Please produce copies of all fines, reprimands, notices of unauthorized practice, or any other violations of the laws of the state of Tennessee that Defendant has received from the State of Tennessee or the Department of Commerce and Insurance in the past ten years.

RESPONSE:


16

16. Produce any and all photographs and/or videos taken of the Plaintiff's Property with regard to any inspection or testing performed by Defendant, at the request of Defendant, or at the request of any of Defendant's representatives.

RESPONSE:


17. Produce any and all documents signed by Plaintiff, including but not limited to examinations under oath, and/or insurance applications.

RESPONSE:


18. Produce any and all documents, including, but not limited to, prior claims documentation submitted to you by other insureds, which were consulted to assist you in determining whether there have been any other investigations for sinkhole activity at neighboring properties within a one-mile radius of the subject Property.

RESPONSE:


19. Produce any and all documents provided to Defendant's geological or engineering experts to assist them in their investigation of this claim.

RESPONSE:


17

20.    Produce any and all documents which support, refute, or otherwise relate to Defendant's or Plaintiff's claims or defenses in this action.

RESPONSE:


21.    Produce copies of any and all field logs regarding the findings of drillings completed at the Plaintiff's Property, recorded by anyone.

RESPONSE:


22.    Produce copies of any and all statements, forms, recordings, or transcripts of recordings of statements made by Plaintiff with regard to this claim.

RESPONSE:


23.    Produce all documents related to any correspondence between Defendant and any geotechnical engineering, geology or structural engineering company that was consulted and/or performed during any investigation relating to Plaintiff's Property.

RESPONSE:


18

24.    Produce all documents reflecting any payment to any entity or person that performed any investigation at Plaintiff's Property.

RESPONSE:



25.    Produce all documents reflecting any contract(s) with any entity or person that performed any investigation at Plaintiff's Property.

RESPONSE:



26.    Produce all documents relating to any application defenses that Defendant has or may have relating to Plaintiff.

RESPONSE:

19

## PLAINTIFF'S REQUESTS FOR ADMISSIONS TO
## DEFENDANT LIBERTY MUTUAL GROUP

Plaintiff, Micah Jackson, by and through her undersigned counsel and pursuant to Rule 36 of the Tennessee Rules of Civil Procedure, hereby requests Defendant, Liberty Mutual Group ("Liberty Mutual" or "Defendant"), respond to Plaintiff's First Request For Admissions to Defendant within forty-five (45) days of receipt hereof, and admit or deny the following:

1.     On or about March 1, 2012, Plaintiff was the owner of that certain real property located at 605 Quarter Horse Lane, Nolensville, TN 37135-9764 ("Property").

ANSWER:


2.     On or about June 6, 2011, Plaintiff renewed or procured a policy of property insurance from Defendant on the Property, known as the LibertyGuard Deluxe Homeowner's Policy ("Policy").

ANSWER:


3.     The Policy covered damage to Plaintiff's Property for sinkhole losses.

ANSWER:


4.     The policy of insurance issued by Defendant to the Plaintiff insuring the Property was an all-risk policy.

ANSWER:

20

5.   There was no exclusion in the Policy for sinkholes.

     ANSWER:


6.   There is physical damage to Plaintiff's Property.

     ANSWER:


7.   Plaintiff has made an application for insurance benefits under her Policy for damages sustained on or about March 1, 2012.

     ANSWER:


8.   The above-referenced Policy was in full force and effect at the time that the Property was damaged.

     ANSWER:


9.   Defendant has refused to pay Plaintiff's claim.

     ANSWER:


10.  Plaintiff has complied with all conditions precedent to obtaining benefits under the Policy from Defendant.

     ANSWER:


21

11.     Defendant has breached its Policy by failing to pay benefits to Plaintiff for her property damage claim.

ANSWER:

12.     Defendant has failed to comply with all of the statutory requirements of Tenn. Code Ann. § 56-7-130.

ANSWER:

13.     Defendant has been found to have committed bad faith towards its insureds in the past.

ANSWER:

14.     Plaintiff, through her attorneys, sent correspondence to Defendant on March 1, 2013, stating that refusal to pay may result in a pursuit of the bad faith penalty in court pursuant to Tenn. Code Ann. § 56-7-105.

ANSWER:

22

15.    Plaintiff paid $888.00 to Defendant for Defendant to issue the Policy at issue in this case.

        ANSWER:

                  Respectfully submitted,

                  *Sonya S. Wright*

                  Joshua E. Burnett, BPR 020686
                  Sonya S. Wright, BPR 023898
                  Marshall Thomas Burnett
                  214 West Main Street
                  Murfreesboro, Tennessee 37130
                  (615) 896-8000, phone
                  (615) 896-8088, facsimile

                  *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, together with the Summons and Complaint, to Defendant, care of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243, as of the date so indicated on the corresponding Return of Service.

                  *Sonya S. Wright*
                  Attorney

23



CERTIFIED MAIL™

7011 2000 0002 3929 0813



U.S. POSTAGE
**$11.25**
PRIORITY
37130 0000
Date of sale
06/17/13
06   2S00
08356160

Marshall Thomas Burnett
Attorneys at Law
214 West Main Street
Murfreesboro, TN 37130

Corporation Service Company
Registered Agent for Liberty Mutual Group
2908 Poston Ave.
Nashville, TN 37203-1312

# IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE
## AT FRANKLIN

MICAH JACKSON            )
                                 )

     Plaintiff,         )
                                 )

v.                             )     **CASE NO. 42150**
                                 )

LIBERTY MUTUAL GROUP,   )
                                 )

     Defendants.       )
                                 )

## NOTICE OF FILING OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), a Notice of Removal in this action was filed in the United States District Court for the Middle District of Tennessee, Nashville Division, on July 18, 2013. Copies of the Notice of Removal and supporting declaration and exhibits are attached as Exhibit A.

                           Respectfully submitted,

                           Brian C. Neal (BPR No. 22532)
                           Stites & Harbison PLLC
                           401 Commerce Street, Suite 800
                           Nashville, TN 37219
                           Telephone: 615.782.2323  Facsimile: 615.742.4104
                           *brian.neal@stites.com*

                           Rodger L. Eckelberry, *pro hac vice admission pending*
                           Trischa Snyder Chapman, *pro hac vice admission pending*
                           Baker Hostetler LLP
                           Capitol Square, Suite 2100
                           65 East State Street
                           Columbus, OH  43215-4260
                           Telephone: 614.228.1541  Facsimile: 614.462.2616
                           *reckelberry@bakerlaw.com*
                           *tchapman @bakerlaw.com*

                           *Counsel for Defendant Liberty Insurance Corporation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy was served by first class U.S. Mail, postage pre-paid, and electronic mail upon the following on this 18th day of July, 2013.

Joshua E. Burnett
Sonya S. Wright
Marshall Thomas Burnett
214 West Main Street
Murfreesboro, TN 37130

*Counsel for Plaintiff*